BOLIN, Judge.
Cullen G. Glass and his sister, Ouida Glass Bandaries, appeal from judgment *439 against them in the principal sum of $5,750 each, in favor of plaintiff Johnny Manis-calco, representing a five per cent fee allegedly due plaintiff for procuring a purchaser for defendants’ property valued at $230,000.
The property belonging to defendants is located in Natchitoches Parish and contains approximately 140 acres. Plaintiff was originally contacted by Mr. Bandaries, husband of Ouida Glass Bandaries, relative to the possibility of selling the property or getting it developed. Shortly thereafter plaintiff discussed the matter with Mrs. Bandaries and Mr. Glass and a verbal contract was entered into between Maniscalco and defendants. It was agreed that plaintiff would attempt to find a buyer or developer; that the purchase price of the property would be $230,000 and that plaintiff would receive a commission on the sale. Subsequently Maniscalco contacted Dr. Gamble and Wesley Glassell of Shreveport who evidenced an interest in forming a corporation for the development of the property.
There is some dispute over the transaction which followed. A rather crudely drawn written instrument was prepared and signed by Gamble, Glassell, Glass and Mrs. Bandaries whereby a corporation was to be formed to take over the property. A portion of the total purchase price of $230,000 was to be represented by the issuance of stock in the corporation and all the parties, with the exception of Mr. Glass, were to own a certain percentage of the stock.
The sale of the property was never consummated, principally because the vendors expressed dissatisfaction with the arrangement and the prospective purchasers, Glas-sell and Dr. Gamble, decided they did not wish to go through with the transaction in the face of this dissatisfaction. After the proposed formation of the corporation failed to materialize, plaintiff instituted the instant suit against Glass and Mrs. Band-aries for the commission allegedly due him.
The defense to this suit is two-fold. Defendants first contend plaintiff was acting as a real estate broker, agent or salesman, without a license, in contravention of the pertinent regulatory statute and consequently cannot recover under LSA-Revised Statute 37:1450 which provides as follows:
“No person, not licensed in accordance with the provisions of this Chapter, shall recover any fee, claim or charge for brokerage in the courts of this state.”
The second prong of the defense is that the written agreement entered into by Glass, Bandaries, Gamble and Glassell was a nudum pactum lacking serious consideration; contained potestative conditions and, further, depended upon certain suspensive conditions which were never fulfilled.
As our decision on the first defense will dispose of the case, we shall discuss it first. The evidence is clear Maniscalco had been involved in a minimum of three real estate transactions, including the one made the basis of this suit, from which he had received a fee as agent for the sale of property. Defendants also introduced testimony that plaintiff had been involved, either directly or indirectly, in several additional real estate transactions from one of which he admittedly had received consideration.
In the absence of statutory regulation an individual has a right to engage in the brokerage business. However, a state may, under its general police power, regulate the business of brokers of all sorts, and the most common of these requirements is that a real estate broker, agent or salesman have a license. The State of Louisiana has enacted such a statute (LSA-R.S. 37:1431 et seq.) In addition to the one quoted supra the following sections of the act are pertinent to the case at bar.
LSA-R.S. 37:1431(3)
“ ‘Real estate broker’ means any person who, for a compensation or valuable consideration sells or offers for sale, buys or offers to buy, or negotiates *440 the purchase or sale or exchange of real estate, or who leases or offers to lease, or rents or offers for rent, any real estate or the improvements thereon for others, as a vocation.” (Emphasis added.)
LSA-R.S. 37:1437:
“No person shall engage in the business or capacity, either directly or indirectly, of a real estate broker, a real estate salesman, a business chance broker, or curb broker unless he has a license under the provisions of this Chapter.”
LSA-R.S. 37:1459:
“The provisions of this Chapter shall not apply to:
“(1) Any person who, as owner or lessor, either individually o-r through an employee or representative not otherwise engaged in the real estate business, performs acts of ownership with reference to property owned by him;
“(2) The service rendered by an attorney at law on behalf of a client;
“(3) A receiver, trustee in bankruptcy, administrator, executor, tutor, or civil sheriff for any parish of this state;
“(4) A trustee selling under a deed of trust.”
In our opinion counsel for plaintiff and the lower court attached too much importance to the phrase “as a vocation,” found in Section 1431(3), supra. We think the district court fell into error in concluding “vocation” means a person’s sole and only occupation. For example, in this case, it is undisputed Maniscalco had a vocation as a farmer and also at times played drums in a band. It was therefore reasoned the act did not intend to cover the activities of this plaintiff in selling this real estate because his main vocation was farming.
“Vocation” in its ordinary, usual and accepted sense, means an occupation which one pursues for the purpose of making a living. Certainly an individual can have more than one vocation. As a matter of fact the courts of this state, in interpreting: the provisions of the act in question, have held an individual may engage in more-than one vocation and still be licensed under the act.
In the case of Uzzo v. Louisiana Real Estate Board, et al., 209 La. 787, 25 So.2d 593 (1946), the plaintiff, a licensed' attorney at law, sought a license to engage ins the business of real estate broker. The Board rejected his application because he did not intend to engage in the business-of a real estate broker as his “sole vocation.” The Supreme Court ruled he was entitled to a license, notwithstanding the fact he was engaged in more than one-vocation, and made it abundantly clear the statute is applicable to persons dealing in real estate whether it is their “sole vocation” or not.
 It seems clear to us this statute cannot be circumvented on the ground that one who engages in the sale of real estate for others is exempt from the operation of the statute merely because he is at the same time engaged in some other occupation. The obvious purpose of the act is the protection of the public in the regulation of the real estate business, which is a calling requiring a fiduciary relationship between the broker and the property owner. The act seeks to regulate all aspects of the sale of real estate for others, and never intended, nor do the cases hold, that one is exempt from the operation of the statute, merely because he has some other employment which contributes to his income.
It, therefore, becomes necessary to examine the evidence of the instant case in order to determine whether Maniscalco had engaged in a sufficient number of real estate transactions to justify classification of such work as that of a real estate broker.
Plaintiff attempts to minimize his real estate business by characterizing the abort *441 ■ed sale in the instant case as a single or isolated transaction. This theory was no ■doubt advanced in an effort to bring the plaintiff within the jurisprudence set forth in Sheppard v. Hulseberg, 171 La. 659, 131 So. 840 (1930). In the cited case, plaintiff was regularly employed by the New Orleans Public Service, Inc., as a foreman in one of its barns. The defendant promised plaintiff $100 if he would sell some property owned by defendant. Plaintiff secured a purchaser for the property and the sale was effected. Upon defendant’s refusal to pay plaintiff his fee, suit was instituted. In finding that plaintiff was entitled to recover the Court said:
“The only sale that defendant (sic) ever procured for another was this single sale, and, so far as appears, he engaged in nothing for others that would require a license under the act. Plaintiff was certainly not engaged in the real estate business as his sole occupation, and the present isolated instance is insufficient for it to be deemed that he was following the business as a partial vocation.” (Emphasis added.)
By way of comparison to the situation in the Sheppard case, supra, let us examine the situation of the plaintiff in the instant case. Sheppard was a full-time employee, and was involved in one isolated, single real estate transaction. The plaintiff in the case at bar has at least three vocations: that of a farmer, of a musician and of a real estate agent. The evidence convinces us plaintiff became engaged in the real estate business about 1956 when he sold some acreage belonging to Mrs. William Rowland to a Mr. Tony Sansone, for which services he was paid a real estate commission of $1,000. He next sold a tract of land owned by Mike Maniscalco to D. O. Furr, Sr., and D. O. Furr, Jr., for which services he was paid a commission by the seller amounting to $1,500. He further testified he sold two houses for D. O. Furr to Mr. Mike Maniscalco and that for these services Mr. Furr canceled a note owed him by plaintiff amounting to $105. He was also involved in the sale of property from Mike Maniscalco to D. O. Furr affecting approximately 43 acres. Although intimately involved in this latter deal, plaintiff denied receiving any commission. Additionally, there is testimony Maniscalco was associated in a transaction involving 28 acres of land owned by Mrs. Rowland, which property was sold to Mike Maniscalco for the purpose of developing a resort.
On the important question of whether plaintiff had engaged in one or more 'isolated sales of property or whether he was following a vocation of a real estate broker, we find by plaintiff’s own admissions he had consummated at least three real estate transactions in which he had received a commission. Likewise, during this time, he was intimately connected with several other transactions involving the proposed sale of both commercial and residential properties.
In the case of Bergeron v. Mumphrey (La.App.Orleans, 1949) 38 §o.2d 411, the court said:
“The statute (referring to the statute here in question) makes it very clear that it was the purpose of the legislators to absolutely prevent anyone from in any way engaging in the real estate business, either as a broker or as a salesman, as a whole or partial vocation without first obtaining the necessary license and without complying with the other provisions of the said statute. * * * ”
Reasoning from the cases, statutes and testimony outlined, it is our opinion that the legislature intended to prevent unlicensed persons from engaging in the real estate business. In addition to the exclusions found in Section 1459 the courts have made one exception to the statute and this exception is found in the Hulseberg case, supra, wherein the Supreme Court held the act in question would not apply to one isolated instance where an unlicensed person sold real estate for another. In the present case the record shows, and it is uncontra- *442 dicted, that plaintiff had dealt quite extensively in real estate property and development, even to the extent of investing his own money in these ventures.
We feel the district court’s ruling cannot logically be reconciled with the strict prohibitions contained in LSA-R.S. 37:1437 and 37:1450 the latter of which prohibits a person from using the courts to recover any brokerage fee unless he is licensed in accordance with the statute.
Having concluded plaintiff is engaged m the vocation of a real estate broker and has never qualified for a license under the regulatory act cited, his demands for a brokerage fee or commission must be denied. This determination renders it unnecessary to discuss the other defense relative to the validity of the written contract in question.
The judgment of the lower court is annulled, reversed and set aside and the demands of plaintiff are rejected at his costs.
Reversed.