AUGUSTINE, Judge.
Associated Executive Control, Inc. (A.E.C.) brought this action in contract, and, alternatively, in quasi contract and under the civilian theory of culpa in contra-hendo, to recover the sum of $50,000 allegedly due pursuant to an agreement with Bankers Union Life Insurance Company (BANKERS). By the terms of that agreement, signed by both parties on January 30, 1974, BANKERS promised to pay to A.E.C.
“a consulting, finding and servicing fee totalling $50,000 in the event that a sale is consummated for all of the stock of Security Guaranty Life Insurance Company which is owned by Bankers Union Life Insurance Company ... in the event that you (A.E.C.) are a moving force in the consummation of a transaction which is acceptable in the full and absolute discretion and approval of Bankers Union Life Insurance Company.

It is understood that included in the fee shall be all monies claimable by the law offices of F.D.V. de LaBarre to this Company ... including all services relating to a piece of property generally described as the Monroe Golf Course, Monroe, Louisiana, ...”
The essence of A.E.C.’s claim is that, having found a party ready, willing and able to purchase the stock of Security Guaranty Life Insurance Company (SECURITY), the fee is now due; that although the sale of SECURITY stock was never consummated, this fact is of no consequence, for A.E.C. did find a buyer and negotiate a sale, and the sole reason for the transaction’s failure was BANKER’S last-minute insertion of a provision, contained in the proposed contract between BANKERS and the prospective stock purchaser, Ronald E. Smith, that A.E.C. did not influence buyer Smith in his decision to purchase SECURITY’S stock; that the buyer, Smith, would have purchased the stock, but for the above provision which was a falsity and which Smith could not, in good faith, acknowledge; that A.E.C. explained its position to BANKERS, but BANKERS refused to delete the provision, with the result that the sale of stock was not perfected.
BANKERS resisted these allegations, asserting, among other things, that at no time was there any final agreement between itself and Ronald E. Smith for the purchase of SECURITY stock; that the failure of the transaction was due to causes other than the mentioned provision and that, in any event, A.E.C. is barred from recovery by operation of law, specifically, La.R.S. *802 37:1431 (before amendment by Act 518 of 1978) and La.R.S. 37:1450, which respectively define “business chance broker” and provide that no person shall receive a brokerage fee unless licensed as a broker under Louisiana law.
The trial court rendered judgment for the plaintiff, A.E.C., finding that A.E.C. fully performed its part of the agreement in good faith, but that BANKERS did not. The lower court also determined that the sole reason for the failure of the sale was BANKERS’ insistence that the buyer, Ronald E. Smith, accede to the questioned provision. In his reasons for judgment, the trial judge did not address the effect of La.R.S. 37:1431 and 37:1450 upon the outcome of this case. We think the application of those statutes is dispositive of this matter.
La.R.S. 37:1431 provides, in part:
“ ‘Business chance broker’ means any person who, for a compensation or valuable consideration, sells or offers for sale, buys or offers to buy, or negotiates the purchase or sale or exchange of a business, business opportunity, or the good will of an existing business for others as a vocation.” Emphasis added.
La.R.S. 37:145o[1] announces the penalty for failure of a real estate or “business chance” broker to obtain a license:
“No person, not licensed in accordance with the provisions of this Chapter, shall recover any fee, claim or charge for brokerage in the courts of this state.”
The first question for our consideration is whether A.E.C.’s activities in connection with the proposed sale of SECURITY’S stock to Roland E. Smith were those of a “broker”, as defined by the above statute.
At the outset, we note that A.E.C. has itself denominated its activities as “negotiation” — its own petition alleges:
“Petitioner sought and negotiated a sale agreement on behalf of defendant, with Ronald E. Smith ... Petitioner retained J. Darrel Jordan, of Olagues, Jordan and Company, to assist in consummating the transaction.”
The petition further avers that A.E.C., through its agent Jordan, acting on behalf of Ronald Smith, delivered a $10,000 deposit to BANKERS and thereby sought to obtain BANKERS’ signature on the final purchase agreement.
We cannot regard A.E.C.’s petition as mere “puffing”, the kind that might arise when a plaintiff tries to plead his case in the strongest possible terms.[2] Later depositions reveal that A.E.C. was indeed thoroughly involved in the transaction as a negotiator. Francois deLaBarre, the secretary-treasurer of A.E.C. (and the party with whom BANKERS originally dealt) testified that his role with regard to purchaser Smith was that, of an attorney as well as a financial advisor, and that these functions were so intermingled as to be inseparable.[3] deLaBarre further stated that the agreement of January 30,1974, by which BANKERS was to honor a consulting, finding and servicing fee, called “for something more than just introducing two people (buyer and seller) to each other . .. ”,[4] and that A.E. C.’s expertise in this kind of transaction was in “problem-solving.”[5] Thus, according to deLaBarre, A.E.C.’s objective was to “accommodate” the needs of buyer and seller by analyzing the financial structures of their respective corporations and by advising them how to reposture their assets so as to comply with state insurance regulations and to reach an optimal financial arrangement.
In truth, A.E.C. (through deLaBarre as well as A.E.C.’s representative, Darrell Jordan) became intimately familiar with the workings of the buying and selling cor *803 porations, interpreted the financial situation of each party — buyer and seller — to the other, and operated as an intermediary with the object to facilitate a transaction between them. The record clearly shows that A.E.C., through deLaBarre and Jordan, was the principal conduit for the flow of communication between BANKERS and purchaser Smith. In a word, A.E.C. “negotiated” the sale of SECURITY by BANKERS to Smith, and therefore conducted activities which La.R.S. 37:1431 defines as “brokerage”.
That does not end the matter, however, for to prevail under R.S. 37:1431, appellant BANKERS must demonstrate that A.E.C. is a “broker”, i.e. conducts such activities “as a vocation.”
In its interrogatories to A.E.C., BANKERS inquired whether A.E.C. had ever received payment for, or asserted a claim to recover, a finder’s fee or a broker’s fee with respect to the sale of a business or real estate. A.E.C. responded that it had been previously involved in approximately thirty-four transactions, without specifying whether these involved brokerage fees or merely finder’s fees. But throughout the course of Mr. deLaBarre’s depositions, it was emphasized that A.E.C.’s expertise was that of a “business management advisory service”,[6] and that A.E.C. had applied its expertise in several acquisitions and mergers involving a prominent local entrepreneur. As Mr. deLaBarre explained it, the primary function of A.E.C. in these various transactions was as “specialists in mergers and acquisitions and how to arrange for a buyer what he wants and for a seller what he wants and get his price, plus we have to satisfy the insurance commissioner of the particular state involved that the new buyer is equal to or an improvement over the seller.”[7]
We are convinced that A.E.C.’s activity with regard to BANKERS and Smith was typical of its business in general, and that its dealings with these parties did not constitute an isolated instance of “negotiation.” Where such is the case, we must hold that A.E.C. pursued brokerage activities “as a vocation.” Parr v. Asaff, 322 So.2d 313 (La.App.2d Cir.1975); Sellers v. Evans, 207 So.2d 841 (La.App.2d Cir.1968); Maniscalco v. Glass, 163 So.2d 438 (La.App.2d Cir.1964).
Finding, as we do, that A.E.C. was a “broker” within the meaning of La.R.S. 37:1431, we now consider the application of La.R.S. 37:1450, supra, and the fact that A.E.C. is not licensed as a broker under Louisiana law.
La.R.S. 37:1450 is clear: a “business chance broker”, such as A.E.C., cannot avail itself of the courts of this state to recover any fee for brokerage unless licensed in accordance with Louisiana law. In effect, R.S. 37:1450 deprives an unlicensed broker of a right of action to recover brokerage fees. Parr v. Asaff, supra. The statute is thus penal in nature and expresses the strong policy of this State that unlicensed brokers shall not conduct such business in Louisiana. Moore v. Burdine, 174 So. 279 (Ct.App. Orleans 1937).
It follows that the trial court erred in allowing A.E.C. to recover any sums for its performance of the contract with BANKERS. The judgment awarding A.E.C. $50,-000.00 (with credit due BANKERS in a sum of $12,338.89) is therefore
REVERSED.
REDMANN, C.J., concurs.

. Prior to amendment by Act 514 of 1978.

.Apparently it did not immediately occur to either A.E.C. or BANKERS that acting as a “negotiator” might bar recovery for A.E.C. — it was not until several years after the suit was filed that BANKERS raised the defense.

. Deposition of deLaBarre, Vol. 11, p. 74.

. Deposition of deLaBarre, Vol. 11, p. 75.

. Deposition of deLaBarre, Vol. 11, p. 9.

. Deposition of deLaBarre, Vol. 1, pp. 65-66.